Well, good morning. May it please the court, Susan Horner for the appellant, Valerie Withrow. With the court's permission, I would like to reserve three minutes for rebuttal. The crux of this case is the interpretation of a group disability contract that doesn't grant discretion, and in particular the ambiguity of certain terms, especially the term salary, which is one's average pre-disability earnings. It is calculated using a base rate, which is $1,000 per month for Withrow and her commissions. In this particular case, while this definition is unambiguous in certain respects, it isn't in the quinn applied to the context of Withrow's situation. Her employment situation, just to remind the court, she went out on a total disability for a severe spine condition in June 1982 and returned back to her employment in February, February 21, February 22. Counsel, let me get something clear. I didn't find in the record, perhaps you can point me to it, I didn't find anything in the record that suggested that your client was anything other than employed from 1976 through a period in 1986. Is that a mistake? Did I misunderstand? I didn't quite understand the question. Was your client employed from 1976 through 1986? I didn't say whether she was at the office. Let me put it this way. Was she fired or did she quit at any time during that period? She did not quit. She remained on the records as a covered employee, but she was out on disability. I get that, but I'm just saying for purposes of whether she was an employee, she was an employee from 1976 through 1986. Yes, on the books. During that time, she did go part-time on disability, but she remained an employee, right? Well, she didn't go part-time on disability. She was totally disabled. Yes. But she remained an employee. Correct. Okay. Let me make sure about that, because as I read the record, it said from June 23rd, 1982 until February 22nd, 1985, she stopped working as a result of her back pain and she underwent a spine surgery, but she continued to receive benefits under a long-term salary continuance insurance policy. No. Actually, the long-term salary continuance policy, that was a comment made in one of the briefs. However, that was a 1984 letter, and I refer the court to excerpt of record 1573. It's on October 9, 1984, and it says, under the terms of your long-term salary continuance insurance defines disability in a certain way. That policy was updated, amended. Many provisions were deleted. I understand that, but it didn't seem to me that it was the long-term disability plan thereafter applied for. In fact, it was a different plan. It was the long-term salary continuance policy, whereas when she finally quit in December of 1986 and didn't go back to work, then she applied for benefits under the long-term disability plan. That's correct. But provided by Reliance. But it didn't seem to me that this was the same plan back in 82 to 95. Well, it was different. Now, the original was different and it wasn't Reliance providing it. It was Reliance providing it. Back there under the long-term salary. Right. And, in fact, Reliance had gone through several permutations of its own name, just like Bakke Halsey did. Well, that was interesting to me because it seemed to me that she did stop working, that she was on a long-term salary, but kind of like my colleague, I didn't see that she quit or that she was terminated in any way. That's correct. In fact, there was, as of January 1986, the policy was amended in substantial respects. The total disability definition was changed. The benefit amount was changed to $5,000, which is 50% of the predisability earnings. The time period that was limited under the rehabilitation benefit, rehab being when you return to another occupation, then they have a formula how they pay that. It used to be limited to 24 months. And the amendment six, which was effective January 1, 1986, is what changed all of that. And then there's a schedule of benefits. But for our purposes, aren't these two different disability policies just ways in which the employer chose to finance the payment of salaries of those within its employee who went on disability? Yes, they would be different. And the amendments show the difference. What I mean is that's the way the employer chose to finance it. It insured against that. That's correct. But it doesn't change the fact that she remained an employee. Yes. Right. So to use a slightly different analogy, if she had become pregnant, went out on pregnancy, she would remain an employee. If she had an automobile accident and she was out for several months, she would remain an employee, even though she may continue to be paid under the company's policies or under its practices. Well, now, there is a difference, which really was not raised in this case. And that is when you go out on disability, at total disability, you're no longer considered an active employee. I'm not talking active. I'm saying employee. But if you go on, if you're on vacation, if you're on a weekend, you're still considered an active employee. Does the term active employee have particular meaning in this case? No. And if so, why? No. I don't find it in the policy. So the term active employee or inactive employee doesn't mean anything in terms of whether the person is an employee of the company. Correct. It just means whether you have to be an active employee in order to obtain coverage to begin with. And so there are certain requirements. Let me ask you another question. You seem to think that salary is the worry, is the ambiguous word, if you will. If I read in the schedule of benefits, under the schedule of benefits, it says that the schedule amount is equal to 60 percent of the monthly earnings, not salary, subject to the schedule amount of $5,000. Why is salary the problem? Because salary is what determines the amount of. Monthly benefits is what determines the amount. Oh. The schedule amount is the amount equal to 60 percent of the monthly earnings. Yes. And all parties and the district court have understood and agreed that the 60 percent was a typo. It is actually 50 percent. Right. Nonetheless, they didn't agree that monthly earnings equals salary. That's true. That's true. We have. Why didn't we fight over that? Pardon me? Why didn't we fight over that? Because, I mean, I'm trying to look at this policy and determine whether it's ambiguous or it isn't ambiguous. And, frankly, that's what I'm thinking you're arguing to some extent. So I said, well, first of all, I got a monthly earnings here, and I wonder how that figures in with salary. Then my next problem was, when you went to trial in this case, what did you go to trial about? The, well, the, if you want to call it the linchpin, it is the application of the terms of the policy and. Just a minute. Yeah. Did you suggest that the trial was about an ambiguous policy? We suggested that the definition of salary clearly fit how. Okay. Now answer my question. Okay. What was the trial about? Because it doesn't seem to me that you'd have a trial if you have a clear and unambiguous policy. And yet it also doesn't seem to me you'd have a trial if I'm going to apply the doctrine of reasonable expectations. Because it would seem to me that in that situation, which you argue, there'd be no reason for the trial. It's automatic application of the doctrine. But I didn't see you object to the trial. I didn't see you say we can't have a trial. So I'm wondering how in heaven's name the doctrine even comes up. That particular doctrine was raised not only at the trial but long before litigation. Just a minute. It doesn't seem to me you're answering my question. When I've interpreted these contracts before, if they're ambiguous and I'm going to construe them against the company, you don't have a trial. However, if in fact they're ambiguous and we're arguing about what the terms of the contract are, then we have a trial. We had a trial, and now you want me to construe the terms against the insurance company. I'm wondering how you addressed that with the court, because there had been no reason for a trial. Well, the other side, the defendant, believed that they made a reasonable interpretation. We believed that they did not make a reasonable interpretation. Did you object to the trial? No. So was the court determining then, and then I look at the doctrine of reasonable expectations, was the court determining whether it was a reasonable expectation of the insured to put the policy as you want it put, interpreted? Was that the court's job? Because the doctrine of reasonable expectations will not allow me to necessarily apply what you want applied unless it's reasonable. Correct. So were we having a trial about whether it was reasonable? Yes. Okay, so then at that point, the trial court made some factual determinations, correct? Yes. And with those factual determinations then, I can't undo those unless they're clearly erroneous. Correct. Because the doctrine of reasonable expectations would not be something I'd even impose if the court, in its factual determination, determines that there's only one reasonable expectation for the contract. One of the problems with the clearly erroneous standard of review when you have a contract interpretation, which is an issue of law, to be reviewed. It is not. It's an issue of law if it's not ambiguous. But if it's ambiguous, then you take facts. You take both sides' story. And generally, if I apply the doctrine of reasonable expectations, I don't need a trial. I'm sorry? In this instance, I don't need a trial. I just say whatever you say is it. But if, in fact, I have a trial, it must have been somebody thought that this wasn't a reasonable expectation, what you're alleging we should do. And so the court had to make that determination. And the court made the determination that Withrow's understanding of the contract, when applied to her particular employment circumstances, was not reasonable. However. Okay. And then I have to apply, then I have to use clear air to undo that, right? With a very close scrutiny of the record because of the. Because she adopted those findings that the defendant gave him to adopt. Right. Okay. Can I say that it is clear air when the plan says only time when a period of less than 24 months could be utilized was when the employee was seeking benefits, had been employed less than 24 months? Yes, because what the. There's nothing in there that says anything about any period of time less than 24 months unless I can say the employee was not employed for less than 24 months. It says take the base salary plus the average commissions during the preceding 24-month period. It doesn't say you have to have 24 months. It says take all the earnings during that period or from the date of employment. Well, but just a minute. That isn't. It says take the base salary plus the average commissions during the proceeding or from the date of employment if employed less than 24 months. So I've already found out the date of employment was somewhere back when we started this approach. And then we've found that the date of, if you will, incapacity was a certain date as determined by the court after taking evidence. So I have a clear air determination. And then I have to say, well, what's the 24 months? I'm having a tough time saying why it's clear air what the court did unless I say he should have given you less money than you got. Because it seems to me he should have taken the months you worked and the months you were out on this long-term disability plan and given you that. And that doesn't make any sense whatsoever. Why? Why? Because that's not 24. That's not your. She was working. She was employed. She was employed, but she wasn't working. So if you're taking an average. Well, what difference? It just says employed here. If you're taking an average salary during the preceding 24-month period, let's say she worked two months or three months, and she earned $1,000 for each of the months and commissions of $10,000, so 10, 20, 30, so $33,000, and you divide that by 24, most all cases that I've read when you have an employee who either gets a bonus that's effective for a certain period. The bonuses are out. Right. Right. But if you get a bonus for an effective period or if you make earnings, it's usually prorated for the period in which you work. Counsel, I thought you already agreed that the insurance company or rather that the employer chose to finance salary payments when an employee was disabled through an insurance policy, right? Yes. So for purposes of our consideration, what she was paid during the period of disability was compensation from the company, was it not? Because it paid for the insurance policy to fund payments to her while she was disabled. Yes, but they're disability benefits. Well, we're looking at an insurance policy here and the language of the policy. And the question is whether it is reasonable when she was employed, as you've conceded, during the 24-month period before she finalized. How can it be reasonable to take 13 months when, in fact, she was employed during the entire 24 months and received compensation from the company, admittedly paid by the insurance company, which was paid by the employer, as a way of funding that? Because the definition of salary says to use commissions and the base pay that the person was receiving from the group policyholder on the date of commencement of disability. There's a second part of it, isn't there? Pardon me? There's a second part of it. Oh, sure. Well, either one. Or from the date of employment, if employed less than 24 months, which raises, which does raise the issue of whether the word employment itself is ambiguous. And we did address that in our brief. Why don't we do this? You're well over time. We've taken you over time, conceitedly. Why don't you let's hear from the other side. We'll give you a minute to rebut, even though we're over time, because we've taken you over time, okay? Okay. So let's hear from the company's representative. By the way, I apologize. He's such a part of the family at this point that I neglected to introduce our colleague, Judge Royce Lambert from the United States District Court for the District of Columbia, former chief judge there, former chief of the FISA court, I believe, as well. Judge Smith and I are honored to have him with us today. Like I say, we're so used to having him here that we just take him as part of the family. So I apologize, Judge, for failing to introduce you before. Please proceed. Thank you. May it please the Court, Victoria Fuller for the Bash Halsey Stewart Shield Salary Protection Plan. As I planned for this argument, my main focus I had intended to present was why this isn't ambiguous in light of Ms. Withrow's arguments. And it's really the argument that reliance was required to look at only 13 months and making its average calculation. And an analogy would be if I were representing to this court how many times I've argued over the past 24-month period, and if I'd argued five times in each of two months but not the rest of the time, then I can't take my ten arguments and divide by two to say that my average was five oral arguments a month. I gather the insurance company's position is that this isn't ambiguous, that the approach that was taken is fair and straightforward. But if it is ambiguous, that Ms. Withrow's proposal is unreasonable. Absolutely. And that I guess you could take it either way. Either you could say she was employed during the entire period, so it's less favorable to her. But you could take number one proposal, which was just take 24 months and give her that. Or they were actually very nice to her by saying, well, now we're going to skip back and we're going to include the other period when she was compensated. Not required under the policy, but another way to construe it. Is that a fair statement of the position? Agreed, Your Honor. And I think the only other potential alternative under Ms. Withrow's argument would be even worse. And that would be if Reliance believes that the disability earnings shouldn't be included, and I believe Ms. Withrow has made that concession, then if you look at only the 24 months without the disability earnings, it would be even worse because then you divide those 13 months of commissions by 24, and then she would get a benefit of about $1,000 a month less than what she's gotten. Well, evidently the trial court believed the policy was ambiguous, or they wouldn't have had a trial, would they? I believe that what was before the trial court was a de novo review of the Reliance's denial. It's a de novo review.  Well, I believe that that was what the district court was tasked with, was looking back. I mean, if this is a question of law and they're just interpreting the contract, there's no sense having a trial. I'm not sure I entirely understand the question, Your Honor. Well, the bottom line is the only reason you have a trial with a contract is if it's ambiguous and you're trying to determine what the terms are. If it's unambiguous, you don't need a trial. You just interpret the contract. It's there in front of you. The parole evidence rule says don't have a trial. You don't need it. All you do is interpret the contract. So it seemed to me the trial court must have thought there was some ambiguousness here. I think the trial court was addressing Ms. Witho's argument that there was some ambiguity here. So he didn't find it was ambiguity after he had the trial? Is that what you're telling me? I would argue that what the court did was look at the evidence, and then the question of ambiguity is, are there two interpretations to which the term is reasonably susceptible? So the court looked at the interpretation of reliance, and the court looked at the interpretation of Ms. Witho, and ultimately decided that the interpretation of Ms. Witho was not reasonable. So I would argue that it impliedly found that there was no ambiguity. I'm sorry. Well, so I guess that's the first time I've ever seen a trial court undertake a trial to find out whether it's ambiguous or not. Well, I do think that's what happened in Kuhnen and in these other contra profferentum cases. Well, I looked at those, and I'm not sure that's what happened in those either. I mean, the bottom line is I was trying to figure it out, and that's why I asked her the question. Either the trial court thought it was ambiguous and could have applied the doctrine of reasonable expectations to cure the ambiguity, or the trial court said, hey, it's ambiguous, and furthermore, I've got to find out what's a reasonable expectation of the insured, and so I'm having a trial, whereupon he decided under the doctrine that what the insured was suggesting was not reasonable. If there was any determination on the part of the district court that there was an ambiguity, then absolutely the district court did find that Ms. Withrow's interpretation was not reasonable, and so the contra profferentum would not apply, and so the doctrine of reasonable expectations would not apply. Why would her interpretation not be reasonable? Basically, under the same notion that I explained a moment ago. Not only is she saying that reliance was required to only look at the 24 months right before the date of disability, she's also saying that reliance was required to average only 13 months, but nothing in the language of this provision supports that. I would argue that the language at 2ER104 can only be interpreted as requiring reliance to look at a 24-month period and average earnings divided by 24. The specific language says the average commissions during the preceding 24-month period. It makes no exception for months in which earnings were zero, and it certainly doesn't say that you can average any lesser period of time than that. But reliance itself used a different formula than the one they ended up with, and they thought that was reasonable. It doesn't comport with what you're arguing here. Reliance looked at two alternative calculations, but the reason that that does not necessarily mean that this was ambiguous is that reliance was doing exactly what we want insurance companies to do and what we want their employees to do. They gave full consideration to Ms. Withrow's claim, they put pen to paper, and they puzzled it through, and if at first blush something else might have made sense, that doesn't mean necessarily that that was actually what was supported by the plan. And certainly if conduct like that is going to be an admission on the part of an insurance company of an ambiguity, then there would be an incentive on the part of insurance companies to make sure that their employees are not giving full consideration to their insurance plan. If they were punished for having taken this more liberal approach, then you would have to say that no good deed goes unpunished. Absolutely, Your Honor. Absolutely. When I look at the date of the disability, I have to give a clear error review, correct? Yes, Your Honor. So what are the best indications in your argument that the date of the disability is as the district court has determined? The date of disability was based on two, primarily on two things. One was the letter from Ms. Withrow's own doctor opining that the appropriate date was in March of 1986. The other was a determination in the file, there's just notes in the file on this, to the effect that Ms. Withrow began earning California disability benefits in March of 1986. So those were the evidentiary grounds which supported that finding. And I submit that particularly in light of the letter from Ms. Withrow's own doctor, that the district court did not clearly err in agreeing that the appropriate date was in March of 1986. So what is the best evidence that I have that what happened here was a past practice of reliance? There are two notations in the file, and I've got them here. But that doesn't compare this with any other person. It's just they relied on it themselves. That was going to be my next question, so I'm glad you asked it, Judge. What is the evidence to say this is a past practice? There are two notations in the file, and one is at 5 ER 953, in which there is an employee noted. There's a discussion, it looks like, between two employees as to whether reliance should look at the preceding calendar years or whether they're looking at the 24 months in an aggregate. That's in this case, in this instance, right? Your Honor, it's not clear. So then if it's not clear, then we're not sure it's a past practice or a present practice with somebody guessing what to do. Well, actually, I would say that there is a date on this document. This document is dated 1982. And there's no indication that Ms. Withrow was making an inquiry at that particular time. I believe she came back in 1990 and first made that inquiry. So this particular document would at least – I'm not sure that it would be pertinent to the initial determination, but at least in terms of how reliance interpreted later on when Ms. Withrow was inquiring, either in 1990 or in 2002, that this document was in existence. And it doesn't appear to be in response to her inquiries. Does it matter whether there is a past practice in this case? Well, the only thing that I think it really pertains to is that the district court did consider Mr. Fisher's observations, and I think the district court also considered some of these other notations in the file and ultimately determining whether the interpretation of reliance was reasonable and whether the interpretation of Ms. Withrow was reasonable. And that's really all I think it bears on. Okay. You had another site besides the ER 953? I'm sorry, I did. 5 ER 953 and the other notation was 6 ER 1253.  6 ER 1253. Same kind of argument. Yes, Your Honor. Because I was going to take you to that, so I'm glad my colleague did. Okay. The same argument you'd make as to both. Yes. Because I realize you said the only reason we know this one document is because it had a 1982 date. What about the 6 ER document? Did it also have a 1982 date? It does not have a date. I didn't think it did. It does not. It was located in the file between two other documents that were dated around that time. So I would argue that at least the inference is that it was sometime in that time period, but it is certainly more vague. It does not contain a specific date. Very good. Okay. And if the Court doesn't have any other questions. I have no other questions. Thank you very much, Counsel. Thank you. I would just ask that the Court affirm the judgment in favor of the plan. Okay. Counsel, we're going to give you a minute rebuttal here. Well, on the topic, I'll speak fast. On the topic of date of disability, the date of disability was not March 18. For the two reasons, let me direct you to several documents. First. What is my standard of review? On issues of fact, it would be clearly erroneous under the. . . Clearly erroneous. Yeah. So as long as there is some plausibility or some practicality that the District Court picked the right one, then I can't undo it, correct? That's not quite true. Well, that's clear error. Okay. But in this case, under the silver case, when you're reviewing a record for the wholesale verbatim adoption of a party's finding, one has to. . . the Court has to use. . . what are the terms? Extra special scrutiny. I understand extra special scrutiny. That's right. But I also understand that when I'm looking for clear error, I just can't substitute my own judgment. Well, if there. . . I have to say, is there any evidence to support what the Court did? There is a scintilla of evidence. Well, it seems to me there's two. But when. . . One, what the Social Security did, and one, what the doctor said to do. That's the error. That's clear. That's the error. The error. She did not receive California State Disability in March. She applied for it, and I'll direct you to her claim form of January 15, 1987. It's at ER 621. She applied for California State Disability on 9-15-86, and the form states she began receiving it on that date. Excuse me, counsel. You say California? California. She didn't. . . I'm talking about federal. No. She didn't apply for Social Security until 1989. Right. Anyway, Reliance knew this. Please see 4 ER 626. And then some time later, Reliance transposed the date from 9-15-86 to 3-18 and decided, oh, that must be her date of disability. You've answered my question. Okay. Thank you very much. There is a second issue that was raised by. . . You're over time here. If we let you go over, what is it you want to talk about? It's regarding Dr. Sechrist because the letter that was referenced, which happens to be a March 26-87 letter at ER 572, that letter specifically states she went out in March for GYN surgery. GYN surgery and spine clinic are two different conditions. The recurrent disability clause requires that if you go out on disability, and she didn't. . . She was on paid leave. It has to be from the same condition. Even these three guys know that GYN and spine surgery are different. Yeah. Right. On that happy note. . . Can I give you. . . Can I give. . . Okay. That's it. Thank you very much.  For your argument, counsel. And what the case just argued is. . .
judges: Lamberth, Smith, Smith